# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

STANLEY DALE HARPER,   )
           )
   Plaintiff,    )
           )
v.           )  Case No. 4:17-cv-00257-JEO
           )
NANCY BERRYHILL, Acting  )
Commissioner of Social Security, )
           )
   Defendant.   )

## MEMORANDUM OPINION

Plaintiff Stanley Dale Harper brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying him supplemental security income ("SSI") benefits. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 8). *See* 28 U.S.C. § 636(c), Fᴇᴅ. R. Cɪᴠ. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff filed his current SSI application in March 2012, alleging he became disabled beginning March 5, 2012. It was initially denied by an administrative law judge ("ALJ"). The Appeals Council ("AC") remanded the case for a further hearing concerning Plaintiff's residual functional capacity ("RFC") and the need for additional rationale concerning the assessed limitations. The AC also ordered the ALJ to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. (R.[2] 18, 35-36). A hearing was held on September 10, 2015 (*id.*) and the ALJ issued an unfavorable decision on October 28, 2015, finding Plaintiff was not entitled to SSI benefits. (R. 15, 18-27). The AC denied Plaintiff's request for review. (R. 1).

# II. FACTS

Plaintiff was 48 years old at the time of the ALJ's decision that is under review. (R. 36). He completed the second grade and last worked as a truck driver in 2000 or 2001. Since then he has been assisted by his family. Plaintiff alleges a disability onset date of March 5, 2012. (R. 18).

Following his hearing, the ALJ, applying the five-step sequential evaluation

---

[2]References herein to "R.___" are to the page number of the administrative record, which is encompassed within Docs. 8-1 through 8-12.

process, found that Plaintiff had the following medically determinable impairments: Hepatitis B and C, bipolar disorder, polysubstance abuse in remission, personality disorder, panic disorder, lumbar degenerative disc disease, and osteoarthritis. (R. 20). She also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*) She further found Plaintiff retained the RFC to perform a reduced range of light work, with various postural limitations and no exposure to hazards. (R. 22). The ALJ then found, based on testimony from a vocational expert ("VE"), that Plaintiff could not perform his past relevant work. He could, however, perform other work, including work as a marker, a garment sorter, or a surveillance system monitor, that existed in significant numbers in the national economy. (R. 27). Accordingly, the ALJ found Plaintiff was not disabled. (*Id.*)

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir.

2015; *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis.  20 C.F.R. § 416.920(a)(4).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[3]  The

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 416.912(a). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff asserts that the ALJ erred in three ways: (1) she improperly evaluated the opinion evidence of Dr. June Nichols; (2) she improperly evaluated Plaintiff's subjective complaints of disabling symptoms; and (3) she failed to find Plaintiff to be illiterate. (Doc. 14 at 12-17). Each will be addressed below.

### A.   Dr. Nichols's Opinion

Plaintiff initially argues that the ALJ improperly found that Dr. Nichols's opinion that Plaintiff's anxiety and panic attacks would markedly interfere with his ability to concentrate is not supported by substantial evidence. (Doc. 14 at 12). The Commissioner responds that the ALJ correctly assessed Dr. Nichols's opinion in evaluating Plaintiff's RFC. (Doc. 17 at 5).

Dr. Nichols evaluated Plaintiff in August 2015. She found that his stream of consciousness was clear; he was oriented to person, place, time, and situation; he had poor mental processing; he was able to perform simple addition and

subtraction using his fingers; his recent and remote memory were "grossly intact"; his intermediate memory was fair; his general fund of knowledge was adequate; his thinking was "somewhat abstract" in nature; and his thought processes were within normal limits. (R. 603-04). Dr. Nichols estimated that Plaintiff was functioning in the borderline range of intellectual ability. (R. 604). She diagnosed Plaintiff with bipolar disorder, panic disorder, polysubstance abuse in remission, alcohol abuse in remission, and borderline intelligence. She stated that Plaintiff's "symptoms cause[d] his ability to relate interpersonally and to withstand the pressures of everyday work to be compromised." (R. 24, 605). She also stated that "his deficits would interfere with his ability to remember, understand, and carry out work-related instructions." (*Id*.) She further stated that "anxiety and panic attacks would markedly interfere with [his] concentration, persistence, and pace." (*Id*.) Finally, she concluded that Plaintiff is unable to handle his own funds, but he can live independently with family support. (*Id*.)

Assessing Dr. Nichols's opinions, the ALJ stated:

> Similar to the claimant's physical impairments, the undersigned does not question the existence of the claimant's mental impairments. The claimant has valid diagnoses of personality disorder, panic disorder, and substance abuse issues that are in remission. As discussed earlier in this decision, the claimant's symptoms are well controlled on medications, and as long as he is compliant with his medications, he has no complaints.... The undersigned gives substantial weight to Dr. Nichols' opinions regarding the claimant's impairments as they are

7

the most restrictive within the record. She opined that the claimant's ability to relate interpersonally is compromised and suggested that the claimant's ability to interact appropriately with the public, with supervisors, and with coworkers is moderately impaired. The undersigned has accounted for this opinion within the current residual functional capacity and has limited the claimant to only occasional interaction with the public, with coworkers, and with supervisors. Dr. Nichols further opined that the claimant would have mild interference with his ability to understand, remember, and carry out simple instructions. Complex instructions would create moderate limitations for the claimant. Therefore, the undersigned finds that the claimant can understand, remember, and carry out short, simple instructions. The claimant can concentrate for two-hour long periods. He demonstrated his abilities to concentrate while completing tasks and answering questions during his evaluation. *Dr. Nichols opined that the claimant's anxiety and panic attacks would markedly interfere with the claimant's ability to concentrate; however, it has already been established that the claimant's symptoms are well controlled when he is compliant with his medications.* Based on the entire evaluation and on the available evidence, Dr. Nichols opined that the claimant would be moderately limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. The undersigned agrees with this finding as well and finds that changes in the claimant's work environment should be introduced gradually and should occur no more than occasionally....

(R. 25-26 (record citations omitted and italics added)). The ALJ further stated,

"As for the opinion evidence, as stated earlier, substantial weight is given to the

opinions of Dr. Nichols as they are supported by the record and because they are

the most limiting." (R. 26).

20 C.F.R. § 416.927 provides the SSA with guidelines for evaluating

opinion evidence. "The regulation provides that the SSA will consider 'the

8

following factors in deciding the weight [it] give[s] to any medical opinion':
examining relationship, treatment relationship, supportability, consistency with the
record as a whole, specialization, and other factors, including the medical
professional's understanding of the SSA's disability programs." *Snow v. Colvin*, 8
F. Supp. 3d 1345, 1353 (N.D. Ala. 2014) (citing 20 C.F.R. § 416.927(c)). Section
416.927(c) further provides that "an 'ALJ may reject the opinion of any physician
when the evidence supports a contrary conclusion' so long as the ALJ 'state[s]
with particularity the weight he gives to different medical opinions and the reasons
why.' " *Snow*, 8 F. Supp. 3d at 1353 (quoting *McCloud v. Barnhart*, 166 F.
App'x. 410, 418 (11th Cir. 2006) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279
(11th Cir. 1987); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

As noted above, the ALJ gave substantial weight to Dr. Nichols's opinion
concerning Plaintiff's mental impairments. However, the ALJ gave little weight to
her opinion that Plaintiff's anxiety and panic attacks would markedly interfere
with his ability to concentrate. (R. 25-26). The court finds this latter conclusion is
supported by substantial evidence for a number of reasons.

First, Dr. Nichols is not a treating doctor and her opinion is "not entitled to
great weight." *Crawford*, 363 F.3d at 1160. She saw Plaintiff one time. (R. 602-
08).

Second, other evidence of record supports the ALJ's decision to give little weight to Dr. Nichols's opinion that Plaintiff had marked limitations in his ability to concentrate. Because assessment of a claimant's RFC is a matter reserved for the Commissioner, the ALJ has the responsibility of assessing the same at the hearing level. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c); Social Security Ruling (SSR) 96-5p; *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). An ALJ does not assume the role of a doctor in assessing a claimant's RFC, and an ALJ is not required to base his or her RFC finding on a doctor's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) ("the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC") (citing 20 C.F.R. § 404.1546(c)); *Green v. Soc. Sec. Admin*., 223 F. App'x 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.") (citing 20 C.F.R §§ 404.1513, 404.1527, 404.1545.)).

The ALJ found that Dr. Nichols's opinion that Plaintiff's anxiety would interfere with his concentration was inconsistent with other evidence of record. (R. 25-26). To properly assess this determination, an extensive examination of the

relevant medical records is necessary. Those records show that Plaintiff presented to Dr. Larry Johnson in December 2009 with complaints of diffuse joint pain and anxiety. (R. 504). His diagnosis included generalized anxiety disorder. He stated that Plaintiff's anxiety was controlled with Xanax. Plaintiff's mood was good, his nerves stable, and he had no homicidal or suicidal ideation. He was continued on medications. (*Id*.) Plaintiff attempted suicide on May 29, 2010. (R. 400). He was hospitalized for several days. He was seen at Mountain Lakes Behavioral Healthcare ("Mountain Lakes") on June 9, 2010. (R. 399). He was described as "unkempt and disheveled" and depressed. (*Id*.) He reported difficulty in staying focused, having memory lapses, and anxiety when in a group. (R. 402). He was seen again in August 2010. Plaintiff reported having anxiety attacks and a lack of concentration, memory, and focus. (R. 405). He was described as having poor insight; being moody, dysphoric, and irritable; having poor judgment; and being within normal limits with regard to orientation. (*Id*.) He was started on Zyprexa. (*Id*.) His dosage was increased on September 3, 2010. (R. 410).

Plaintiff's September 28, 2010 medical records demonstrate slight improvement. His appearance, mood, and orientation improved, but he was still having difficulty focusing. (*Id*.) By December 2010, his mood was better, his anxiety and depression were reduced, and his concentration, memory, and focus

had improved.  (*Id*.)  He was continued on his medication.  (*Id*.)  His assessment in February 2012 was improved: mood was "alright"; irritability was controlled; no anxiety or depression; and normal concentration, memory, and focus.  (R. 395).  He was continued on his medications.  (R. 396).  He continued to improve during 2011 and 2012 while he was taking his medications.  (R. 391, 393, 415, 460, 543-46).  He did complain of short term memory issues in January 2012.  (R. 389, 460).  He also complained in March 2012 that his mood was "so-so" and that he was not able to concentrate for very long.  (R. 390, 461).  Celexa was added to his medication regime.[4]  (*Id*.)  His May 2012 report was positive, except for complaints regarding his memory.  (R. 462).  His medications were continued.  During a "re-intake" evaluation at Mountain Lakes, Plaintiff's condition was assessed and found to be in a dysphoric mood, with good and logical thought content, and oriented.  (R. 442).  In August 2012, he reported "slight irritability and anxiety" and an increase in depression.  He was also having some difficulty focusing due to "racing thoughts."  His medications were continued and a Lamictal titration was added.[5]  (R. 463).

---

[4]"Celexa (citalopram) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs).  Celexa is used to treat depression." https://www.drugs.com/celexa.html (last visited March 27, 2018).

[5] Lamictal (generic name lamotrigine) is used to delay mood episodes in adults with bipolar disorder (manic depression).  https://www.drugs.com/lamictal.html (last visited March

Plaintiff was also evaluated by psychologist Dr. Mary Arnold in May 2012. Plaintiff told her that he could not work due to mood swings. (R. 423). Dr. Arnold diagnosed Plaintiff with a substance abuse mood disorder, polysubstance and alcohol abuse in full remission, medication dependence, and personality disorder. His GAF score was 54. She noted that he had the basic skills to manage funds and that "[h]is response to cognitive items is likely less than his best." (R. 426).

Plaintiff reported increased symptoms during his October 2012 visit at Mountain Lakes. However, he reported that he had lost his voucher for the lamictal and took the medication for only one month. (R. 464). He also reported "psychosocial stressors and 'personal problems,' " including that he separated from his wife, his mother was recovering from a broken hip, and his brother recently passed away. (*Id*.) His lamictal was restarted and his other medications were continued. (*Id*.) During a November 13, 2012 visit to Lakeside North LLC for a medication refill, he reported "[h]e is doing well and has no current complaints." (R. 543). He continued to report increased depression, stress and occasional irritability due to legal issues during a November 21, 2012 visit to Mountain Lakes. (R. 465). By December 2012, Plaintiff reported he was

27, 2018).

"handling the legal stress slightly better, but continues to feel depressed." (R. 466). He also complained of "some irritability and anxiety." (*Id*.) His concentration, memory, and focus were determined to be fair. (*Id*.) His lamictal was increased and he was continued on his other medications. (*Id*.)

During his January 2013 visit, Plaintiff reported that his mood was fair, he experienced no sadness, anxiety or irritability, but his concentration, memory, and focus were not good. He did state that he was experiencing racing and ruminating thoughts. (R. 467). It was about this time–January 2013– that Plaintiff's primary care physician discontinued his narcotic medications. This resulted in an increase in his irritability, anxiousness, and depression. (R. 468). He also stated that his concentration, memory, and focus were lacking. (*Id*.) The medical notes state that he was continuing "to work towards disability." (*Id*.)

By November 2013, Plaintiff was doing well with his anxiety disorder and he had not been having panic attacks while he was on his medication. (R. 656-58). He reported that he was able to handle daily stressors and that he was resting better. (R. 656). By January 2014, he reported that his pain was under control with current medications and that he was able to perform his activities of daily living. (R. 655). His mood was calm and his nerves were stable. (*Id*.) He did complain that he was having trouble falling asleep and staying asleep; however, he

also admitted that he had run out of his blood pressure medication. (*Id*.)

Plaintiff continued to do well on his medications (*see* R. 617, 625, 627, 629, 631, 639, 643-46, 648) until March 2015, at which time his anxiety and depression were no longer well controlled. (R. 620). He was having panic attacks, he was not able to rest, and he reported that he was not able to handle daily stressors. (*Id*.) Plaintiff also stated that his chronic pain medication was not adequate to control his situation. He asked to have his medication adjusted or changed. (*Id*.) The medical staff began counseling Plaintiff about the need to reduce the amount of controlled medications that he was taking to avoid adverse effects such as tolerance and addiction. (R. 620, 623-24).

Later in March 2015, Plaintiff underwent an MRI of the lumbar spine because of complaints of back pain. The MRI revealed some degenerative changes and lumbar intervertebral disc disease. (R. 688). After reviewing the results, in May 2015, Plaintiff's doctor refused to change his pain medication and recommended that he take Norco[6] and that he be referred to an orthopedist. (R. 614-19). The medical notes reflect that Plaintiff continued to do "well in terms of [his] anxiety disorder." (R. 614). His medication was effective because he was

---

[6]Norco "is used in the treatment of pain that is moderate to moderately severe. Norco tablets are considered to be 'stronger' than other medications containing hydrocodone/APAP because they do not contain as much acetaminophen per dosage." http://ipharmacylist.com/meds/norco-uses.html (last visited March 28, 2018).

not having panic attacks and he was able to handle daily stressors and rest. (*Id*.) During his July 2015 visit, Plaintiff reported that his chronic pain was adequately controlled with the pain medication and he continued to do well with his anxiety. (R. 610).

The court finds that the ALJ's determination to afford little weight to Dr. Nichols's opinion that Plaintiff's anxiety and panic attacks would *markedly* interfere with his ability to concentrate is supported by substantial evidence. The foregoing medical records demonstrate that Plaintiff did improve when he was compliant with his medications. This is particularly true for the period from November 2013 through July 2015. While there were instances where Plaintiff's situation digressed, they were not to such a degree that the determination of the ALJ is not supported by substantial evidence. Additionally, the records do not demonstrate that Plaintiff was as limited as Dr. Nichols opines. Various records show that oftentimes Plaintiff had normal speech, euthymic mood, logical thought process, normal behavior, appropriate appearance, fair judgment and normal thought content. (R. 389, 390, 391, 393, 395, 399, 410, 412, 415, 423-26, 440, 442, 460-63, 466-68[7]).

---

[7]The court does note that Plaintiff's insight and judgment were sometimes described as limited. (*See* R. 460-68 (January 2012 - February 2013); *but see* R. 391-399, 410, 412 (June 2010 - September 2011 (fair insight and judgment)). In August 2010, his insight and judgment were rated as poor. (R. 405). Additionally, at times, his affect was described as blunted or

Additionally, state agency psychological consultant Dr. Robert Estock reviewed the available evidence concerning Plaintiff and determined that he could "understand, remember, and carry out short and simple instructions/tasks; but not those more detailed or complex," and that he could maintain his concentration and persistence to carry out simple instructions. (R. 357). Dr. Estock stated that Plaintiff would be moderately limited in his ability to carry out detailed instructions or concentrate for extended periods. (*Id*.)

Premised on Plaintiff's conditions and all the evidence of record, the ALJ concluded that Plaintiff could understand, remember, and carry out short, simple instructions; attend for two-hour long periods; and tolerate occasional interaction with the public, co-workers, and supervisors. (R. 22). Changes in Plaintiff's work environment should be introduced gradually and should occur no more than occasionally. (*Id*.) The ALJ properly considered all the evidence, including Dr. Nichols's opinion, in determining Plaintiff's ability to concentrate. (R. 25-26). *See Duval v. Comm'r of Soc. Sec*., 628 F. App'x 703 (11th Cir. 2015) (there is no error when the ALJ's conclusion is supported by substantial evidence); *Forrester v. Comm'r of Soc. Sec*., 455 F. App'x 899, 902 (11th Cir. 2012) (finding that the ALJ determined that the treating physician's opinion was not bolstered by the

---

restricted. (R. 412, 415, 461, 463, 465-68).

evidence and the evidence supported a contrary finding). Plaintiff has failed to demonstrate that the ALJ's decision is not based upon substantial evidence.

As part of this claim, Plaintiff states that in finding that his condition is "well controlled when he is compliant with his medications," the ALJ improperly speculated that he was not taking his medications. (Doc. 14 at 12-13). He further asserts that "there is no evidence that when Dr. Nichols examined [Plaintiff] in August 2015 he was off his mental illness medications." (*Id*.) Counsel then concludes, "The ALJ's speculative finding that, at the time [Plaintiff] was examined by Dr. Nichols in August 2015, he must not have been taking his medications, is not supported by substantial evidence." (*Id*. at 13). The Commissioner does not specifically address this contention.

The court has examined the record and finds that Plaintiff is correct. There is no evidence in the record that he was not taking his medications when he was examined by Dr. Nichols. While there are other instances where his condition was impacted by a lack of medication, this does not appear to be one of those instances. That does not, however, change the court's finding that there is substantial evidence to support the ALJ's conclusion that Dr. Nichols's assessment of the impact of Plaintiff's anxiety is entitled to little weight.

**B.      Plaintiff's Subjective Complaints of Disabling Symptoms**

Plaintiff asserts that the ALJ failed to properly evaluate his complaints of disabling symptoms.  More specifically, Plaintiff argues that he suffers from chronic back pain, a bulging lumbar disc, degenerative disc disease and lumbar intervertebral disc disease, which prevents him from doing a great deal of walking or standing as required by the light work jobs identified by the VE.  (Doc. 14 at 15).  The Commissioner argues that "the ALJ properly evaluated Plaintiff's subjective complaints of disabling symptoms, together with the other evidence, in assessing his RFC."  (Doc. 17 at 11 (citing R. 22-26)).

**1.      Standard of Review**

 Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 419.919; *Moore,* 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  Specifically, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms.  *See* 20 C.F.R. § 419.929; *Dyer v. Barnhart*, 359 F.3d 1206, 1210 (11th Cir. 2005); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  In analyzing the

evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 416.929(c)(1); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

In addressing Plaintiff's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

*Wilson*, 284 F.3d at 1225; *see also* 20 C.F.R. §§ 404.1529, 416.929. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir.

2011).

When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all the evidence – objective and subjective. *See* 20 C.F.R. § 416.929(c)(2). The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, measures a claimant takes to relieve symptoms, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 416.929(c)(3), (4). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

## 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these

symptoms were not credible.[8]  (R. 26).  The court agrees and the record supports this conclusion.

With regard to Plaintiff's complaints of back pain, the court finds that they initially appear in his medical records around September 2011.[9]  (R. 563).  The complaints were intermittent.  (*See e.g.* R. 564).  During Plaintiff's May 2012 physical examination by consultative neurological examiner Dr. Ashley Thomas, he complained of pain all over, but he continued to be independent with his "activities of daily living, ambulation, and transfers."  (R. 418).  Dr. Thomas observed, among other things, that Plaintiff was able to get on and off the examination table; he had a regular heart rate and rhythm; and he had no edema, a negative straight leg raise test, and normal muscle bulk and tone.[10]  (R. 419-21).  She also noted that he had some cervical soreness.  (R. 421).

Additionally, after a review of Plaintiff's records, State agency medical consultant Dr. Estock found that Plaintiff could perform work under the current

---

[8]In making this statement, the ALJ appears to be referencing both Plaintiff's medical and psychological limitations even though she uses the term "medically determinable impairments." (R. 26).

[9]Plaintiff testified at his hearing in September 2015 that he had been complaining about back problems for years.  (R 39-40).

[10]Prior to this juncture, Plaintiff was principally being medically treated for chronic hepatitis B.  (*See* R. 363-72, 418-421, 504-35).  He was also being treated for bi-polar disorder, generalized anxiety disorder, and polysubstance dependence.  (*See* R. 387-416, 504-35).

RFC.  (R. 347-58).  A disability premised on back pain was not listed on the Disability Determination Explanation form.  (R. 347-60).  Still further, while Plaintiff did complain of joint pain in his lower extremities during the time surrounding his March 2015 MRI, he also repeatedly stated that his chronic pain was adequately controlled with his current pain medications except during one visit.[11]  (*See* R. 610-12, 620-22, 625-27).  This evidence is inconsistent with this hearing testimony a few months later that the pain is constant, it makes it difficult for him to bend, squat, or lift heavy objects, and it causes him to be unsteady and remain in bed.  (R. 41-43).

Premised on the foregoing, the court finds that the ALJ's decision is supported by substantial evidence.  Plaintiff has failed to produce evidence to support his allegations of disability.  *See* 20 C.F.R. §§ 416.912(a) & (c), 416.929(c).  While he does experience back pain, its manifestations are not sufficient to support a finding that he is disabled or that he should be limited to sedentary work.

To the extent Plaintiff argues that "he has two bulging discs and one disc 'tearing off from the bone,' " that appears to be an overstatement.  (Doc. 14 at 3).

---

[11]With regard to that one visit in March 2015, Plaintiff's treating physician continued the current course of treatment and medication.  (R. 624).

While Plaintiff testified at his hearing that the MRI demonstrated two bulging discs and "one tearing off from the bone," that is not exactly what the MRI report states. (*Compare* R. 40 & 688). The report indicates two "small broad-based left ... disc protrusions" at L2/L3 and Peri/L4, "a disc bulging and bilateral facet hypertrophy" at L4/L5, and a "mild disc bulging and left foraminal annual tearing" at L5/S1, with bilateral facet hypertrophy. (R. 688). The impression from the reviewing physician is "[d]egenerative changes and lumbar intervertebral disc disease." (*Id*.) After Plaintiff's treating physician reviewed the MRI, he continued Plaintiff's medication as previously prescribed and recommended that Plaintiff be referred to an orthopedist. Accordingly, the court does not find this evidence sufficient to disturb the ALJ's decision.

### C. Illiteracy

Plaintiff contends that the ALJ erred in not finding him to be illiterate. (Doc. 14 at 13-14). A finding that Plaintiff is "illiterate" would be significant, according to Plaintiff, because if he also is deemed to be unskilled or found to have no transferrable skills and is limited to sedentary work, he would be deemed disabled under the Medical-Vocational Guidelines ("the grids"). (Doc. 14 at 14 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.17 & .19)). The Commissioner responds that the ALJ properly determined that Plaintiff should be

considered as a person with a marginal education. (Doc. 17 at 17 (citing R. 26)).

To fully appreciate Plaintiff's argument, it is necessary to place that argument in context. Having assessed Plaintiff's RFC, the ALJ proceeded to step four of the sequential evaluation process and found that Plaintiff could not perform his past relevant work.[12] (R. 26). The ALJ then was required at the fifth and final step to determine if Plaintiff could perform other work.[13] When a claimant proves he cannot perform his past relevant work, the Commissioner must produce evidence that other work exists that the claimant could perform given his RFC and other vocational factors. *See* 20 C.F.R. § 416.960(c)(2); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant, however, still bears the responsibility of showing that he cannot perform the jobs identified by the Commissioner to demonstrate he is disabled. *See Doughty*, 245 F.3d at 1278 n.2; *Jones*, 190 F.3d at 1228.

In this case, the ALJ initially examined the grids to determine whether they might direct a finding that Plaintiff was disabled or not disabled given Plaintiff's RFC and other vocational factors. (R. 26-27). Because Plaintiff had

---

[12]*See* 20 C.F.R. § 416.920(a)(4)(iv).

[13]*See* 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(1).

nonexertional limitations, the ALJ could use the grids only as a framework for her decision. (R. 27). *See* 20 C.F.R. §§ 416.969, 416.969a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2). When a claimant's vocational factors do not fit the criteria of a particular grid rule, the generally preferred course of action is to obtain testimony from a VE to help determine whether other work exists, which is what the ALJ did in this case. (R. 27, 57-58). *See Phillips*, 357 F.3d at 1242-44 ("[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills") (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985) (emphasis added) (citing *Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir.1982)); *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) ("If nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform.").

The ALJ next sought testimony from the VE. She asked the VE to assume an individual with Plaintiff's age, education, work experience, and RFC. (R. 57-58). She then inquired whether there were jobs that such an individual could

perform.  The VE responded that there were jobs the individual could perform.

Those jobs include work as a marker, a garment sorter, and a surveillance system

monitor.  (R. 58).  Because the ALJ's hypothetical question to the VE

encompassed all the limitations included in Plaintiff's RFC, and the record, it

provides substantial evidence to support the ALJ's RFC finding.  The ALJ

properly relied on the VE's testimony to conclude Plaintiff could perform other

work and was not disabled.  *See Phillips*, 357 F.3d at 1242-44; *Jones*, 190 F.3d at

1229.

Turning to Plaintiff's argument that the ALJ erred in not finding him

illiterate, the court finds the argument to be without merit.  The applicable

regulations define illiteracy as an "inability to read or write."  20 C.F.R. §

416.964(b)(1).  They further provide that someone is illiterate "if the person

cannot read or write a simple message such as instructions or inventory lists even

though the person can sign his or her name.  Generally, an illiterate person has had

little or no formal schooling."  *Id*.  An individual with a marginal education is one

who has an "ability in reasoning, arithmetic, and language skills which are needed

to do simple, unskilled types of jobs."  20 C.F.R. § 416.964(b)(2).  The regulations

further provide that "[w]e generally consider that formal schooling at a 6th grade

level or less is a marginal education."  *Id*.

The evidence in the record shows that Plaintiff had only a third grade education. (R. 290). However, his work history includes driving an 18-wheel truck and trailer for approximately 16 months. (R. 276, 278-79). This is significant because the *Dictionary of Occupational Titles* provides that the job of a truck driver includes submitting reports regarding the condition of the truck and maintaining driver logs. U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("*DOT*") (4th ed. 1991, rev.) § 904.383-010 (Tractor-Trailer-Truck Driver), 1992 WL 687703.[14] Additionally, he appears to have completed two work history reports in this case.[15] (*See* R. 253-260; 276-83). The foregoing demonstrate at least a basic reading and writing ability that is inconsistent with being illiterate. This evidence also establishes that Plaintiff was not significantly limited due to illiteracy or an inability to communicate in English. Thus, substantial evidence

---

[14]The definition provides, in pertinent part, as follows:

Drives gasoline or diesel-powered tractor-trailer combination, usually long distances, to transport and deliver products, livestock, or materials in liquid, loose, or packaged form: Drives truck to destination, applying knowledge of commercial driving regulations and skill in maneuvering vehicle in difficult situations, such as narrow passageways. Inspects truck for defects before and after trips and submits report indicating truck condition. Maintains driver log according to I.C.C. regulations....

*DOT* § 904.383-010 (1992 WL 687703).

[15]The report completed in 2012 provides that Plaintiff completed the form. (R. 283). The earlier report completed in 2008 does not indicate who completed the form. (R. 260). The handwriting on both forms, however, appears to be similar.

supports the finding of the ALJ.

Lastly, the Commissioner argues that even if the ALJ erred in failing to find Plaintiff was illiterate, the error would be harmless. (Doc. 17 at 18). The court agrees. The ALJ used Medical Vocational Rule 202.18 as a framework for her determination. (R. 27 (citing Medical-Vocational Rule 202.18)). This rule assumes a limited education or less, but if the ALJ had used Medical-Vocational Rule 202.16, which provides for a claimant who is "illiterate or unable to communicate in English," the grids would still have directed a finding of "not disabled." *See* Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.16. Therefore, Plaintiff's argument is without merit.[16]

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 30th day of March, 2018.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[16]To the extent Plaintiff relies on Rules 201.17 & .19, the court is not impressed. (Doc. 14 at 14). For those rules to be applicable, the ALJ also would have to find that Plaintiff was limited to sedentary work–something the ALJ failed to find. Thus, those provisions are not applicable.